[Filed at Pendleton, May 20, 1889.]

## C. W. FOSTER AND W. J. VAN SCHUYVER, AS-SIGNEES OF J. W. VIRTUE, FOR THE BENEFIT OF CRED-ITORS, RESPONDENTS, *v.* J. W. VIRTUE, DANIEL SMITH, HUNG SING, AND LONG BUE, APPELLANTS.

WHERE ONE DEALS WITH THE AGENT of assignees for the benefit of creditors, with full knowledge of the true relation which such agent occupies to the property and the outstanding equities, he does so at his peril.

*J. R. Baldwin* and *E. B. Williams,* for Appellants.

*M. L. Olmstead,* for Respondents.

LORD, J.—This is a suit in equity to restrain the defendants Hung Sing and Long Bue from paying certain moneys due and hereinafter to become due upon a certain writing, to the defendants Virtue and Smith, and also to require the payment of said moneys to the plaintiffs as such assignees, and for a decree compelling the said defendant Smith to pay the sum of four thousand one hundred dollars, with interest, to plaintiffs as assignees aforesaid, and to surrender such writing or bond, and be enjoined and prohibited from collecting or receiving any further proceeds thereon, or in any wise interfering, etc.

The material facts are these: In September, 1875, the defendant Virtue, finding himself unable to pay his debts, made a general assignment of all his property to the plaintiffs for the benefit of all his creditors; that at the time it was supposed, by proper management and expected developments in mining interests, by holding the property for such time as might bring about the best sale of it, the creditors might not only be paid in full, but that some residue might remain for the defendant Virtue. In accordance with this purpose, and to aid the plaintiffs as such assignees, there was appointed by the creditors a

board or committee composed of three of the creditors, of whom one was the defendant Smith, to advise and assist the plaintiffs in disposing of the assigned property. Virtue, too, in some way, and with the full understanding of all concerned, was constituted an agent to assist in the management of the business, and the disposition of the property, to help bring about this expected or desired result. The Clark Creek property, which is the subject-matter out of which the controversy arises, was included in the general assignment, which, in May, 1879, was, by the defendant Virtue and one Blackland, conveyed to Hartman and Cohen, and subsequently, by deed of the plaintiffs as such assignees, confirmed to them. Hartman and Cohen conveyed the same to the Placer Gold Mining Company, which in turn conveyed it to the defendant Virtue, and Virtue again to one Kline, of Chicago, who conveyed it to the Clark Creek Mining Company. This latter company executed a mortgage to the defendant Virtue for six thousand two hundred dollars, which was a part of the purchase price, and the same not being paid when due, the said property was sold under an attachment, — not by foreclosure proceedings, — and a judgment obtained thereon, and subsequently the defendant Virtue assigned said judgment to the defendant Smith. When execution was issued, the property was sold and bid in by the defendant Smith, who received a sheriff's deed therefor. Thereafter the defendants Virtue and Smith entered into an agreement with the defendants Hung Sing and Long Bue to sell said Clark Creek Mining property to them for the sum of thirteen thousand two hundred dollars, to be paid as specified in the agreement, and upon the completion of said payments to execute and deliver to the defendants Hung Sing and Long Bue a good and sufficient deed to said property. During all these transmutations in relation to this property, the defendant Virtue acted as agent for the assignees.

The defense of the defendant Smith is, that the defendant Virtue owed him for money advanced while he was permitted to do business for the benefit of the estate in assignment, and that the judgment assigned to him was collateral security for such money, and he asks that the amount so due him the plaintiffs be required to pay, and take said property.

From this brief review of the facts, it will be seen that the main point is, whether at the times of making said advances the defendant Smith had notice or knew that the property belonged to the plaintiffs as assignees, and whether his purchase at the sheriff's sale was in good faith and without notice of the outstanding title, either in law or equity.

The referee found that the defendant Smith understood and knew the relation that the defendant Virtue occupied to this property, and that he bought it in as the agent of the defendant Virtue; that the transactions with the defendants Hung Sing and Long Bue in regard to this property was a fraud upon the rights of the plaintiffs as such assignees, and that Smith ought to account to them for all the moneys he has received under such agreement, and that any balance remaining to be paid under it should be paid to the assignees.

The court while finding that the defendant Virtue's relation to the property was at all times as agent for his assignees,—the plaintiffs,—and that the money or evidence of debt taken by him for the property, as such agent, belongs to the plaintiffs, further finds that the defendant Smith, at the times of making the alleged advances of money, the assignment of the judgment, and the purchase at the sheriff's sale, had no knowledge that the property belonged to the plaintiffs as such assignees, and that he was a purchaser in good faith, and without notice of any outstanding equities or title in law or in equity.

XVII. OR.—39

The evidence shows that the defendant Smith was one of the creditors of the estate in assignment, and that he had been paid out of the property belonging to it; that he was one of the advisory board in the interest of the creditors to aid in the disposing of the estate when it should be deemed advisable, and to the best interests of all concerned; and that during all the time, especially as relates to the transfer of the Clark Creek Mining Company, that he had access to the books of the defendant Virtue, often acted for him in regard to matters connected therewith, and that he could examine them whenever he wanted to, without imputation of wrong-doing.

Without doubt, it is true that during all the times the defendant Virtue's relation to the property was as agent for the plaintiffs, and that all moneys or evidences of debt taken by him for the property was taken as such agent, and belonged to the assignees. The note for six thousand two hundred dollars, secured by mortgage and taken in his own name for the Clark Creek mining property, belonged to the plaintiffs as assignees for the estate in assignment, and when that note fell due and was not paid, and he under a proceeding of attachment and without resort to the security procured a judgment, and assigned that judgment to the defendant, without the knowledge or consent of his assignees, as the evidence shows, such judgment belonged to the plaintiffs, unless the defendant Smith took it without notice of the plaintiffs' equities.

To this point there is little controversy, except as the transactions affect the defendant Smith with notice. In his testimony, the defendant Smith says that the judgment was assigned to him as collateral security for moneys and securities that he had deposited with the defendant Virtue, which he had used in carrying on the business. Of this assignment no record was made; and when execution was issued and the sale made, he bid off

the property and put it on record, as the sheriff's deed shows, in his own name. Yet his own evidence, as well as that of the defendant Virtue, shows that he bid it off at the request of and as agent for the defendant Virtue. His words are: "Mr. Virtue gave me authority to bid it off. He assigned me the judgment as collateral security." He was then putting himself on record as holding property and owning it when the title in fact belonged to another, according to his own statement; yet when the same is sold to the Chinamen, Virtue joins in the agreement, and when several payments are made by them, amounting to nearly enough to liquidate the amount of his alleged claim, instead of so applying it, it is all paid over to the defendant Virtue with the exception of a small sum.

Why the necessity of making this whole transaction so misleading? Be it remembered that he was one of the advisory committee of the assigned estate, whose duty it was to aid in the disposition of the property to the best interests of the creditors. As such, and while he acted in that capacity, it was his duty to know the property that belonged to it, and that which remained unsold. Such knowledge would seem essential to an intelligent and proper discharge of the functions of the office with which the creditors had intrusted him, and which he had voluntarily accepted and assumed. Especially must this have been so in respect to this property, of which such great expectations were indulged, and which constituted a major part of the estate. At the time, it was understood that Virtue was to act as agent of the estate in assignment, and the defendant Smith knew and understood the reasons for it. He must have known, then, that this Clark Creek mining property was a part of such estate, and the defendant Virtue's relation to it, and that he could not become the legal or equitable owner of it, or of any debt given as a

part of the purchase price for it, or any judgment obtained upon such debt, or that such judgment could not be assigned to him by Virtue as collateral security, nor could he, by request of Virtue, or otherwise, under an execution upon such judgment, become the rightful owner of it by purchase at the sale by the sheriff.

This result is in accordance with his own admissions. Van Schuyver, one of the plaintiffs, says at the time of his discovery of the agreement with the Chinamen, and the fact that they had been making payments, and that the defendants Virtue and Smith were giving receipts for it, he asked Smith how he came to be signing receipts for this money, and that he replied that "it is my property. I bought it at the sale, and Virtue gave it to me as security for moneys that I have loaned him, or let him have, rather." The plaintiff told him that the matter would have to be adjusted when Mr. Virtue got up, and a day or two afterwards he met Mr. Smith, who said: "Van, I've been thinking over that matter, and I could n't see, myself, how Virtue could give me the property. I know it was assigned to the assignees, and did n't know how he had any right to turn it over to me."

The testimony of Foster is to the same effect. He says: "I think it was about a year ago, or a little more, when Mr. Smith and Mr. Van Schuyver and myself were talking of the transaction, when Mr. Smith remarked that he bid the property off at sheriff's sale, and at the time of the sale he did not stop to think, or did n't take the second thought, as to his relations to the assignees, and to that property; but if he had taken second thought, he would have known that he could not have held the property, or that Virtue had any right to give him that property for what he, Virtue, owed Smith. This conversation was had in my office in Baker City." And to a further inquiry, the witness testified: "Yes; he stated that if he had taken

second thought he would have known that it was a part of the assigned property."

Nor does the defendant Smith deny the conversation. He recollects some conversation about that time.

In view of the facts of the relation as creditors, and one of the advisory committee, and the evidence of his knowledge of the relations the defendant Virtue occupied as to the property, when it is further considered that the evidence discloses that he was upon intimate and confidential terms with the defendant Virtue,—had access to his books, acted as his clerk, and looked over the accounts of people who came to do business with Virtue,—the conclusion is irresistible that he did know that Virtue was acting as agent for the plaintiffs as assignee, for the benefit of creditors, and that he bid in the property with such knowledge. And when to this the conduct of Smith and Virtue are noted in respect to the devious path of this transaction, we cannot doubt the defendant Smith's knowledge of the true relation of Virtue to this property, and that the agreement of the defendants Virtue and Smith with the defendants Hung Sing and Long Bue in regard to this property operated as a fraud upon the rights of the plaintiffs as assignees for the benefit of creditors.

The evidence shows that the defendants Hung Sing and Long Bue have paid on the agreement for the sale of the Clark Creek mining property, mentioned in the pleadings, the sum of about $4,000, which has been paid over to the defendant Virtue, except the sum of $584, retained by the defendant Smith.

As the defendant Virtue was the agent of the plaintiffs, he must account to them as such assignees for the amount he has received, and the defendant Smith must pay over the sum of $584, the amount received and retained by him; and the defendants Hung Sing and Long Bue, or either of them, are forever enjoined from paying any fur-

ther sum or sums now due or to become due upon such agreement to the defendants Virtue and Smith; and the defendants Virtue and Smith, or either of them, are forever prohibited and enjoined from receiving or collecting any further sum now due or to become due hereafter upon said agreement; and the said defendants Virtue and Smith are commanded and required to surrender and deliver up such agreement and bond and all papers connected therewith to the plaintiffs, and that said property mentioned therein be decreed to belong to the plaintiffs as such assignees, subject to said agreement; and the said plaintiffs as such assignees are required, upon the defendants Hung Sing and Long Bue paying the sums now due and to become due hereafter, according to the terms of such agreement and all other conditions therewith, to make and execute and deliver to the said defendants Hung Sing and Long Bue, a good and sufficient deed as prescribed by the same.